UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **FILED UNDER SEAL** |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| ANY AND ALL RADIO STATION ) | |
| TRANSMISSION EQUIPMENT, RADIO ) | |
| FREQUENCY POWER AMPLIFIERS, ) | |
| RADIO FREQUENCY TEST EQUIPMENT) | |
| AND ANY OTHER EQUIPMENT ) | |
| ASSOCIATED WITH OR USED IN ) | |
| CONNECTION WITH THE ) | |
| TRANSMISSIONS ON FREQUENCY ) | |
| 87.7 MEGAHERTZ LOCATED AT ) | |
| 616-624 BLUE HILL AVENUE, ) | |
| DORCHESTER, MASSACHUSETTS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, United States of America, by its attorney Andrew E. Lelling, United States Attorney for the District of Massachusetts, David G. Lazarus, Assistant United States Attorney, of counsel, alleges upon information and belief as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action *in rem*, pursuant to 47 U.S.C. § 510, to forfeit and condemn to the use of the United States any and all radio station transmission equipment, radio frequency power amplifiers, radio frequency test equipment, and any other associated with, or used in connection with, any radio transmission on the frequency 87.7 Megahertz ("MHz") from the roof of, and located within, the abandoned premises in the commercial building located at

616-624 Blue Hill Avenue, Dorchester, Massachusetts equipment (the "Defendant Radio Station Equipment").

2. Based upon the training, expertise, and experience of Federal Communications Commission ("FCC") agents, as well as specific observations of such equipment used in association with transmissions on the frequency 87.7 MHz, the Defendant Radio Station Equipment includes, without limitation, FM antenna(e); coaxial cable(s); transmitter(s); FM exciter(s); equalizer(s); amplifier(s); mixer(s); radio console(s); FM tuner(s); audio cable(s) and connector(s); microphone(s); audio monitor(s); video monitor(s); desktop and/or laptop computer(s); audio playback components, such as equipment to play audio tapes, compact disks, and long playing ("LP") records; headphone(s); telephone system(s); network router(s); and uninterruptable power supply(ies).

3. The Defendant Radio Station Equipment is being, or was, used in violation of 47 U.S.C. § 301 and is subject to forfeiture to the United States pursuant to 47 U.S.C. § 510 and 28 U.S.C. § 2461.

## **JURISDICTION**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

5. Venue lies in the District of Massachusetts pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(b), as the Defendant Radio Station Equipment is located within the District of Massachusetts, and the acts and omissions giving rise to the forfeiture occurred in the District of Massachusetts.

## STATUTORY BACKGROUND

6. The FCC is an independent federal regulatory agency created by Congress to regulate interstate, intrastate, and foreign radio communications pursuant to the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. §§ 151, et seq. The FCC is responsible for ensuring that no person transmits radio signals within the territorial boundaries of the United States without an FCC license or other prior FCC authorization.

7. Section 301 of the Act prohibits the operation of "any apparatus for the transmission of energy or communications or signals by radio (a) from one place in [the United States] to another place in the [United States]," except under, and in accordance with, the Act and with a license for that purpose granted under the provisions of the Act. 47 U.S.C. § 301. The FCC issues licenses to operate FM radio broadcast stations on frequencies between 88.1 MHz and 107.9 MHz (the "FM band"), 47 C.F.R. § 73.201, and to operate television stations on frequencies immediately below the FM band between 82 and 88 MHz ("TV channel 6"). 47 C.F.R. § 73.603.

8. The only exceptions to this licensing requirement are for Federal government operators, certain services that are "licensed by rule" pursuant to Section 307(e) of the Act, and certain non-licensed low-power radio transmitters operating at a power level that complies with Section 15.209 of Title 47 of the Code of Federal Regulations (the "FCC Rules"). The FCC Rules limit such non-licensed, low power radio transmitters operating on frequencies between 82 MHz and 88 MHz to a field strength of 100 microvolts per meter (μV/m) at a distance of three meters from the transmitting antenna. 47 C.F.R. § 15.209(a). The FCC Rules further restrict non-licensed, low power radio transmitters operating on frequencies between 76 MHz

and 88 MHz to perimeter protection systems in industrial, business, and commercial applications. 47 C.F.R. § 15.209(g).

9. Pursuant to Section 510 of the Act, "[a]ny electronic, electromagnetic, radio frequency, or similar device, or component thereof, used . . . with willful and knowing intent to violate [S]ection 301 . . . may be seized and forfeited to the United States." 47 U.S.C. §510.

10. Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 510, provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act." 47 U.S.C. § 312(f)(1).

11. Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under section 510, provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

## STATEMENT OF FACTS

12. On April 28, 2017, the FCC received a complaint filed by a Cambridge, Massachusetts resident alleging that three separate, unauthorized FM broadcast stations were operating at or near 614 Blue Hill Avenue, Dorchester, Massachusetts.

13. On May 4, 2017, three FCC agents began to investigate the allegations in the April 28, 2017 complaint. Using an FCC mobile direction-finding vehicle (an "MDFX"), the FCC agents detected an FM broadcast station operating on 87.7 MHz and determined that the source of the signal was located in a two-story commercial building at 616-624 Blue Hill

4

Avenue, Dorchester, Massachusetts (the "Antenna Location"). A station operating on 87.7 MHz is not required to have a license if it complies with the power and use limits of Sections 15.209(a) and (g) of the FCC Rules. 47 C.F.R. §§ 15.209(a), (g). The FCC agents observed four FM broadcast antennas mounted to the roof of the Antenna Location. At the time, the FCC agents were unable to gain access to the building to determine which of the four antennas was associated with the transmissions on 87.7 MHz. The FCC agents observed on Ellington Street, Dorchester, Massachusetts, an entrance to a gated alley that appeared to lead into the Antenna Location. A sign on the gate indicated that the wireless carrier AT&T operated a cellular base station from the roof of the Antenna Location.

14. After using the MDFX to confirm that the station was operating on 87.7 MHz, the FCC agents measured the strength of the station's signal at a distance of 232 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 2,484,133 $\mu$V/m, or 24,841 times the permissible level for a non-licensed low power radio transmitter under Section 15.209(a) of the FCC Rules.

15. The FCC agents then returned to the Antenna Location, where they spoke with the employee of a business in the Antenna Location building at 616-624 Blue Hill Avenue, Dorchester, Massachusetts. The employee stated that the property manager of the Antenna Location was an individual named Jerome Frazier ("Frazier").

16. The FCC agents then issued a Notice of Unlicensed Radio Operation ("First NOUO"), dated May 4, 2017, to the "Landlord/Radio Operator" at "616 Blue Hill Avenue, Dorchester, Massachusetts." The FCC agents left the First NOUO with the employee with whom they spoke, who stated that he would deliver the document to Frazier. The First NOUO advised, among other things, that the operation of the unlicensed radio station on 87.7 MHz

violated Section 301 of the Act and instructed the recipient to immediately cease unlicensed operation of the station. The First NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment. The First NOUO indicated that the recipient had ten days to respond. To date, the FCC has not received a response to the First NOUO.

17. Although the FCC does not grant licenses to operate FM radio broadcast stations on 87.7 MHz, it is possible for certain FM radios to receive the audio portion of an analog television broadcast signal on TV channel 6, which is located immediately below the FM band on the frequencies between 82 MHz and 88 MHz. Accordingly, on May 17, 2017, an FCC agent searched the FCC's television license database and confirmed that the FCC had not issued a license to operate an analog television station on TV channel 6 at or near the Antenna Location.

18. On June 14, 2017, an FCC agent returned to Dorchester, Massachusetts and used the MDFX to confirm that a radio station continued to operate on 87.7 MHz at the Antenna Location. The FCC agent made an audio recording of the station's broadcast stream on 87.7 MHz, during which the announcer identified the station as "B87" and provided a telephone number (617-440-8777) that listeners could use to contact the station's studio.

19. The FCC agent then performed online research for websites referencing "B87" in the greater Boston, Massachusetts, region. The FCC agent found that the station maintained a website at www.B87fm.com (the "Website") and a Twitter feed at www.twitter.com/b87fm (the "Twitter Feed"). Both the Website and the Twitter Feed identified the station using the "B87" branding, the operating frequency of 87.7 MHz, and the telephone number 617-440-8777. The Website also identified "Diva Mendes" as the host of a radio program that is broadcast on the station weekdays between 3:00pm and 5:00pm. Through a public records search, the FCC agent

identified Davina Elena Mendes ("Mendes") as "Diva Mendes" and determined the location of her residence.

20. On July 13, 2017, the FCC Enforcement Bureau's Columbia Regional Office (the "Columbia Office") issued a Notice of Unlicensed Operation (the "Second NOUO") to Mendes. Like the First NOUO, the Second NOUO advised, among other things, that the operation of the unlicensed radio station on 87.7 MHz at a power level higher than that permitted in Part 15 of the FCC Rules for non-licensed, low power operations violated Section 301 of the Act and instructed Mendes to immediately cease unlicensed operation of the station. The Second NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment. The Second NOUO indicated that Mendes had ten days to respond.

21. The Columbia Office transmitted the Second NOUO to Mendes's residence by First Class Mail and United Parcel Service ("UPS") overnight delivery. On July 21, 2017, UPS returned the Second NOUO with an indication that "Receiver did not want, refused delivery." The Second NOUO sent by First Class Mail was not returned to the Columbia Office. To date, the FCC has not received a response to the Second NOUO.

22. On August 14, 2017, two FCC agents returned to the Antenna Location and observed that the station continued to operate on 87.7 MHz. Using an MDFX, the agents determined that the source of the station's signal was located in the Antenna Location. The FCC agents observed the same FM broadcast antenna mounted to the roof of the Antenna Location as the FCC agents observed on June 14, 2017. The FCC agents made an audio recording of the station's broadcast stream on 87.7 MHz, during which the announcer identified the station as "B87.7 FM."

23. After using the MDFX to confirm that the station was operating on 87.7 MHz, the FCC agents measured the strength of the station's signal at a distance of 232 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 4,868,440 µV/m, or 48,684 times the permissible level for a non-licensed low power radio transmitter under Section 15.209(a) of the FCC Rules.

24. On August 15, 2017, two FCC agents contacted the AT&T Network Operations Center and received permission and the access code to enter and inspect AT&T's leased premises on the roof of the Antenna Location. Once on the roof of the Antenna Location, the FCC agents observed four similar FM broadcast antennas. The FCC agents then used a spectrum analyzer to measure the frequency emitted from each of the four FM broadcast antennas and determined that the antenna transmitting signals on 87.7 MHz (the "B87 Antenna") was located on top of a room that AT&T apparently used for its cellular transmitting equipment (the "AT&T Equipment Room"), which itself was located on top of the entrance to an abandoned portion of the Antenna Location (the "Abandoned Premises"). The Abandoned Premises appeared to have been previously used as a theater and a church. The FCC agents then observed the path of the coaxial cable connected to the B87 Antenna until it disappeared into a chimney of the Abandoned Premises.

25. On August 16, 2017, two FCC agents contacted Frazier to arrange an inspection of the Abandoned Premises.

26. On September 21, 2017, two FCC agents met with Mr. Frazier at the Antenna Location, where Mr. Frazier authorized the agents to access the roof of the Antenna Location by a fire escape. Upon reaching the roof, the FCC agents observed that the configuration of the B87 antenna had not changed. The FCC agents then inquired about a radio station operating from the

Abandoned Premises, but Mr. Frazier stated that he had no knowledge about the station. Mr. Frazier then allowed the FCC agents to enter the Abandoned Premises to search for the radio transmission equipment. Upon entering the Abandoned Premises, the FCC agents observed a coaxial cable, similar in size and color to the coaxial cable connected to the B87 Antenna, running along a ledge to the left of the front entrance of the Abandoned Premises. Although the Agents believed that this was likely the coaxial cable connected to the B87 Antenna, they were unable to search for the termination point of the cable because Mr. Frazier said that he had a conflicting appointment and asked the FCC agents to leave the premises. The two FCC agents then contacted AT&T to request access to its leased premises on top of the Abandoned Premises.

27. On October 3, 2017, an FCC agent performed a public records search and determined that the building at 616-624 Blue Hill Avenue is owned by New Fellowship Baptist Church.

28. On October 4, 2017, the Columbia Office issued a Notice of Unlicensed Operation (the "Third NOUO") to Mendes. Like the First NOUO and the Second NOUO, the Third NOUO advised, among other things, that the operation of the unlicensed radio station on 87.7 MHz at a power level higher than that permitted in Part 15 of the FCC Rules for non-licensed, low power operations violated Section 301 of the Act and instructed Ms. Mendes to immediately cease unlicensed operation of the station. The Third NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment. The Third NOUO indicated that Ms. Mendes had ten days to respond.

29. The Columbia Office sent the Third NOUO to Ms. Mendes's residence and to Ms. Mendes, in care of the property owner, New Fellowship Baptist Church, by First Class Mail and UPS overnight delivery. Based on a review of the UPS online parcel tracking tool, (a) the copy

of the Third NOUO sent to Ms. Mendes's residence was returned to the Columbia Office as unclaimed, and (b) the copy of the Third NOUO sent to Ms. Mendes, in care of the property owner, was received by Mr. Frazier on October 4, 2017. The copy of the Third NOUO sent by First Class Mail to Ms. Mendes's residence was returned to the Columbia Office on October 18, 2017, but the copy sent to Ms. Mendes in care of New Fellowship Baptist Church was not returned to the Columbia Office. To date, the FCC has not received a response to the Third NOUO.

30.  On October 4, 2017, an AT&T representative, Mike Daley ("Daley"), contacted an FCC agent in response to the FCC agent's September 21, 2017 request for access to the AT&T Equipment Room above the Abandoned Premises. Because the FCC agent was not available to travel to the Antenna Location that day, Daley initiated a videoconference with the agent to provide a virtual tour of AT&T's equipment room and its antenna site on top of the Abandoned Premises. Based on the virtual tour and the agent's discussion with Daley, the FCC agent concluded that the coaxial cable attached to the B87 Antenna must lead into the Abandoned Premises itself and, accordingly, was a portion of the same coaxial cable observed during the brief inspection of the Abandoned Premises on September 21, 2017.

31.  On October 6, 2017, an FCC agent searched the public website, www.whitepages.com, and confirmed that the station's call-in number, as advertised on the Website and broadcast on June 14, 2017, was associated with Mendes.

32.  On October 7, 2017, an FCC agent searched the FCC's television license database and confirmed that the FCC had not issued a license to operate an analog television station on channel 6 at or near the Antenna Location.

33. As set forth above, unlicensed broadcasting is permitted between 82 MHz and 88 MHz only if the field strength of the transmissions does not exceed 100 μV/m at three meters from the transmitting antenna. 47 C.F.R. § 15.209(a).

34. As described above, the FCC agents investigated the source of the transmissions on 87.7 MHz and, upon taking field strength measurements, determined that the field strength measurements, when extrapolated to three meters, far exceeded the level authorized for a non-licensed low-power radio transmitter under Section 15.209(a) of the FCC Rules.

35. The FCC does not issue licenses to operate FM broadcast stations on 87.7 MHz, and non-licensed, low power operation on 87.7 MHz is limited to perimeter protection systems for industrial, business, and commercial applications. 47 C.F.R. § 15.209(g).

36. Although it is possible to receive on 87.7 MHz the audio signal of an analog television station operating on TV channel 6 (82 – 88 MHz), no such television station is authorized to operate at or near the Abandoned Premises.

37. The unlicensed radio station transmitting on 87.7 MHz is operating in violation of 47 U.S.C. § 301.

38. Thus, Mendes is operating an unlicensed station in violation of 47 U.S.C. § 301.

39. Because the Defendant Radio Station Equipment is being used to operate an unlicensed broadcast radio station, seizure and forfeiture of the Defendant Radio Station Equipment is necessary to prevent continuing violations of the Act.

40. By this action, Plaintiff seeks to seize and forfeit the Defendant Radio Station Equipment, identified more specifically above in Paragraph 2, located on the roof of the Antenna Location and in the Abandoned Premises. Plaintiff submits that there is probable cause to believe that the devices comprising the Defendant Radio Station Equipment may be found on the

roof of the Antenna Location and within the Abandoned Premises because FCC agents observed the B87 Antenna on the roof of the Antenna Location and confirmed that the connected coaxial cable traversed a portion of the interior of the Abandoned Premises.

## CLAIM FOR RELIEF

41. Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1 through 40.

42. The Defendant Radio Station Equipment was used, and continues to be used, for illegal, unlicensed radio broadcast in violation of 47 U.S.C. § 301.

43. By reason of the foregoing, the Defendant Radio Station Equipment was, and continues to be, used and possessed with willful and knowing intent to violate 47 U.S.C. § 301, and is therefore subject to forfeiture to the United States under the provisions of 47 U.S.C. § 510.

**WHEREFORE**, Plaintiff, the United States of America, requests that a warrant of this Court be issued for the arrest of the Defendant Radio Station Equipment; that the Defendant Radio Station Equipment be forfeited and condemned to the use of the United States; that Plaintiff be awarded its costs and disbursements in the action and for such other and further relief as this Court deems just and proper.

                                            Respectfully submitted,

                                            ANDREW E. LELLING,
                                            United States Attorney,

Dated: March 5, 2018          By:    /s/ David G. Lazarus
                                               DAVID G. LAZARUS, B.B.O #624907
                                               Assistant United States Attorney
                                               United States Attorney's Office
                                               1 Courthouse Way, Suite 9200
                                               Boston, MA 02210
                                               (617) 748-3100
                                               David.Lazarus2@usdoj.gov